**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JOVANE SLANDER MOURAO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | Civil Action No.: 26-CV-11443-AK |
| v. | ) | |
| | ) | |
| ANTONE MONIZ, Superintendent of | ) | |
| Plymouth County Correctional Facility; | ) | |
| DAVID T. WESLING, Acting Boston | ) | |
| Field Office Director, U.S. Immigrations | ) | |
| and Customs Enforcement; MICHAEL | ) | |
| KROL, HSI New England Special Agent in | ) | |
| Charge; TODD LYONS, Acting Director, | ) | |
| U.S. Immigrations and Customs | ) | |
| Enforcement; MARKWAYNE MULLIN, | ) | |
| U.S. Secretary of Homeland Security; and | ) | |
| TODD BLANCHE, Acting U.S. Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Before this Court is Petitioner Jovane Slander Mourao's ("Petitioner") Amended Petition

for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). [Dkt. 13].  Petitioner

challenges his detention by Immigration and Customs Enforcement ("ICE"), claiming, inter alia,

that the bond hearing afforded to him was "in violation of his due process [rights] and the legal

standards set forth by the First Circuit." [Dkt. 13 at ¶ 5].  Respondents oppose the Petition,

arguing, among other grounds, that the Court lacks jurisdiction to review the Immigration

1

Judge's ("IJ") custody determination, Petitioner failed to exhaust his administrative remedies, and the IJ's determination of Petitioner as a flight risk was supported by evidence. [Dkt. 14].

For the reasons stated below, the Petition is **GRANTED**, and Respondents are **ORDERED** to immediately release Petitioner.  Accordingly, Petitioner's Motion to Expedite Ruling [Dkt. 19] is **DENIED AS MOOT**.

## I.      BACKGROUND

Petitioner is a 54-years old noncitizen who has resided in the United States for nearly 30 years.  He is a native and citizen of Brazil.  On July 20, 1996, Petitioner entered the United States on a nonimmigrant B-2 visa, which allowed him to live in the United States lawfully until January 19, 1997. [Dkt. 13-5 at 3].  Petitioner, however, never left the United States.  Over the course of 30 years, Petitioner established his family in the United States, including three United States citizen children aged 23, 21, and 17. [Dkt. 13 ¶ 18].  Petitioner has not been convicted of any criminal offense. [Dkt. 13 ¶ 23].  His criminal history includes only traffic violations, which were all dismissed at the time of Petitioner's arrest. [Id.].  On March 25, 2026, ICE arrested Petitioner when he was going to work. [Id. ¶ 25].  ICE was allegedly following another individual who was in the vehicle Petitioner was driving. [Dkt. 13-5 at 2].  He was, thus, collateral to ICE's enforcement action against another target.

Accordingly, on March 25, 2026, Petitioner filed Petition for Writ of Habeas Corpus, challenging his detention, and seeking immediate release, or in the alternative, a bond hearing. [Dkt. 1 at 6-7].  On March 30, 2026, Respondents submitted a Response, agreeing that Petitioner's detention is under 8 U.S.C. § 1226(a), and that any relief should be limited to a bond hearing before an Immigration Judge ("IJ"). [Dkt. 9].  On April 6, 2026, Petitioner received a bond hearing, and the IJ denied his release on bond, finding him to be a flight risk. [Dkt. 13-1].

Petitioner appealed the IJ's denial before the Board of Immigration Appeals ("BIA") on April 22, 2026.  Accordingly, the IJ issued a written memorandum on May 1, 2026, outlining reasons for the denial of bond to the Petitioner.

After IJ's denial of bond, Petitioner also filed an Amended Petition on April 29, 2026, arguing that IJ, in violation of his due process rights, incorrectly applied legal standards and relied on insufficient evidence—that as a matter of law could not support—finding him to be a flight risk. [Dkt. 13].  Respondents oppose the Amended Petition, contending the Court lacks jurisdiction to review the IJ's determination, Petitioner should have exhausted appeal before the BIA, and that evidence sufficiently supports the IJ's finding of flight risk.  The Court addresses Respondents contentions in turn as follows.

## II.   DISCUSSION

### A.  Subject-Matter Jurisdiction

Respondents argue that the Court lacks jurisdiction pursuant to 8 U.S.C. § 1226(e) to review the IJ's decision denying bond under 8 U.S.C. § 1226(a).  Respondents also argue that Petitioner asks this Court to reweigh evidence, which is beyond the scope of this Court's jurisdiction.  Petitioner, on the other hand, contends that the IJ misapplied the law and relied on insufficient evidence—as a matter of law—to find him to be a flight risk, thus violating his due process rights.  As discussed below, Petitioner's challenge is directed at the legality and constitutionality of the IJ's process, and review is, therefore, not barred by Section 1226(e).

As held in Reyes Vargas v. Plymouth Correctional Facility et al, and by other judges of this Court, the Court can assess "whether the IJ adopted a constitutionally and legally adequate process in affording a bond hearing to Petitioner." 2026 WL 1453510 at *3; see also Miti v. Moniz, 2026 WL 884639 at *2 (D. Mass. 2026) ("District courts retain habeas jurisdiction to

3

ensure that immigration bond hearings are conducted within constitutional bounds"); Dos Reis v. Vitello, 2025 WL 1043434 at *2 (D. Mass. 2025) ("[C]ourt may intervene where an immigration bail determination is *ultra vires* or facially unconstitutional"); Massingue v. Streeter, 2020 WL 1866255, at *4 (D. Mass. 2020) (district courts can assess the IJ's bond hearing's compliance with constitutionally mandated standards).

Here, Petitioner contends the IJ relied on insufficient evidence—that, as a matter of law—could not support the finding of flight risk, and thus, the IJ's bond decision was arbitrary and capricious, violating Petitioner's due process.  Specifically, Petitioner takes issue with IJ's exclusive reliance on uncorroborated I-213 (Record of Deportable/Inadmissible Alien), and alleges the IJ failed to consider probative evidence, drew unreasonable inferences from insufficient evidence, and failed to acknowledge alternatives to detention. [Dkt. 18 at 3].  These assertions clearly challenge the legality and constitutionality of the IJ's bond hearing, as opposed to seeking reweighing of evidence as the Respondents argue. This Court's review is, therefore, not barred by 8 U.S.C. § 1226(e).

### B.  Exhaustion

Petitioner need not exhaust appeal before the BIA.  As statute does not require exhaustion, "sound judicial discretion governs" to determine whether Petitioner should first resort to the BIA. Morgan v. Garland, 120 F.4th 913, 927 (1st Cir. 2024) (quoting McCarthy v. Madigan, 503 U.S. 140, 144).  Where "a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim," common law exhaustion may be unnecessary. Portela-Gonzalez, 109 F.3d 74, 77 (1st Cir. 1997). "[T]he loss of liberty is [certainly] a . . . severe form of irreparable injury" incurred by Petitioner. Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005).  Common law exhaustion is also unnecessary

in circumstances where substantial doubts exist as to agency's institutional competence or power to grant meaningful redress. Reyes Vargas, 2026 WL 1453510 at *4.

Here, similar to Reyes Vargas, Petitioner's liberty interests are at stake and his detention, being discretionary under 8 U.S.C. § 1226(a), is without any specific length.  Petitioner also challenges the legality of his detention, and the IJ's bond hearing for violation of his due process rights—a constitutional challenge over which BIA lacks authority to meaningfully adjudicate. See Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 238 (W.D.N.Y. 2019) ("[T]he BIA does not have jurisdiction to adjudicate constitutional issues").  Therefore, "[a]llowing Petitioner's indefinite detention . . . especially when the legality of Petitioner's detention and process to determine his custody is under challenge, would be a significant harm." Reyes Vargas, 2026 WL 1453510 at *5.  Accordingly, Petitioner need not resort to BIA's appellate review.

### C.  Sufficiency of Bond Hearing

#### 1.  Standard of Review

The Court's authority to review the IJ's custody determination is "limited."  Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019).  The Court cannot reweigh evidence or review the IJ's discretionary judgments. Diaz-Calderon, 535 F. Supp. 3d at 676 (quoting Arellano v. Sessions, No. 6:18-CV-06625, 2019 WL 3387210, at *7 (W.D.N.Y. 2019)) ("[A] district court sitting in habeas review . . . has no authority to encroach upon an IJ's discretionary weighing of the evidence."); see also Pensamiento v. McDonald, 315 F. Supp. 3d 684, 688 (D. Mass. 2018) ("Congress has eliminated judicial review of discretionary custody determinations.").  The Court must also be "mindful of [its] obligation to afford . . . a degree of deference to the [factfinder's] determinations." U.S. v. Tortora, 922 F.2d 880, 882 (1st Cir. 1990).

Within these limitations, the Court can, however, assess whether an immigration bond hearing comported with due process requirements.  To review the IJ's custody determination for constitutional adequacy, the Court considers whether the IJ applied the correct legal standard. Petitioner may generally show the IJ's failure to apply a correct legal standard by either (1) "point[ing] to the language of the immigration judge's opinion" or (2) "demonstrate[ing] that 'the evidence itself could not—as a matter of law—have supported' the immigration judge's decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria, 358 F. Supp. 3d at 240).  For the former, "[m]erely stating the proper standard does not discharge the obligation to correctly apply the standard." Akinsanya v. Garland, 125 F.4th 287, 297 (1st Cir. 2025).  For the latter, Petitioner must show that "under the circumstances, no reasonable immigration judge could have come to" conclude Petitioner was a flight risk. Miti, 2026 WL 884639, at *6.  Here, Petitioner points to the IJ's order as well as the evidentiary record to claim the IJ failed to correctly apply the legal standards in finding Petitioner a flight risk.  The IJ did not make any finding about Petitioner's dangerousness and only found him to be a flight risk. Respondent's claim is also primarily limited to Petitioner's risk of flight.  Thus, the Court limits review only to the question of whether the IJ violated Petitioner's due process rights in finding he was a flight risk.

The Court now identifies the burden and standards that are applicable in an immigration bond hearing such as Petitioner's.  At an immigration bond hearing in this circuit, the government bears the burden of establishing that the noncitizen is either (1) dangerous by clear and convincing evidence or (2) a risk of flight by a preponderance of the evidence. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).  As Respondents acknowledge, Matter of Guerra,

24 I. & N. Dec. at 40 (BIA 2006)[1] provides the factors that an IJ may consider in determining whether a non-citizen poses a risk of flight for the purposes of custody determination.  While an IJ has "broad discretion in deciding the factors," they "may" consider "any or all of the following":

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

> Id. at 40.

In considering these factors, an IJ's decision should be "reasonable." Id.  An IJ may also "consider any evidence in the record . . . when assessing flight risk, provided that such evidence is 'probative and specific.'" Garcia v. Hyde, 817 F. Supp. 3d 112, 127 (quoting Matter of Guerra, 24 I. & N. Dec. at 40-41).  While an IJ's determination of flight risk involves discretion, it is still a legal standard that is applied to assess custody determinations.  The determination of flight risk requires an IJ to consider multiple factors as set out in Matter of Guerra, and thus the IJ's application of flight risk to Petitioner's facts is reviewable. See Martinez v. Clark, 124 F.4th 775, 783 (9th Cir. 2024) (quoting Wilkinson v. Garland, 601 U.S. 209, 221 (2024)) ("[A]pplication of the 'dangerousness' standard . . . [is] a legal standard so long as federal courts 'can assess whether an IJ correctly applied the statutory standard to a given set of facts.'").  The Court accordingly reviews the IJ's order to determine if it correctly applied the legal standards.

---

[1] In Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021), the First Circuit overruled Matter of Guerra, to the extent it placed burden on the noncitizen, as opposed to the government, to prove that he or she is not a flight risk or a danger to the community at the bond hearing.  However, Matter of Guerra continues to guide the IJ's inquiry into determination of flight risk and danger to the community during a custody determination hearing.

### 2. Petitioner's Bond Hearing was Legally Deficient

In light of the standards set out above, the Court considers: first, whether the IJ's order reflects an application of the correct standard of law to find Petitioner a flight risk; and second, whether Respondents' evidence could—as a matter of law—establish, by the preponderance of the evidence, that Petitioner was a flight risk. Although either of the above determinations would be sufficient to find if the IJ afforded due process to Petitioner, the Court considers both, because Petitioner raises both issues.

Based on review of the unofficial transcript of the bond hearing, evidentiary record before the IJ, and IJ's post hoc written decision, the IJ did not properly apply the correct standards of law (including the Matter of Guerra, 24 I. & N. Dec. 37) to assess flight risk nor does the evidence—as a matter of law—support the finding of flight risk.

With regards to the application of correct legal standard, the record suggests the IJ failed to properly apply the Guerra factors. First, IJ's oral decision does not reflect any application of Guerra factors. At the bond hearing, the IJ neither mentioned Guerra factors nor any evidence relevant thereto, and effectively recited allegations in Respondents' I-213 as reasons for Petitioner to be a flight risk. Second, in the post hoc decision, while IJ mentions Guerra factors, and states to have considered these factors, the material inconsistencies within the memorandum do not reflect meaningful application of Guerra factors.

At the outset, the Court notes the IJ's written decision is substantially different from the oral decision in the uncontested unofficial transcript. For instance, the IJ did not consider any of Guerra factors in the oral decision, but included those in the written decision. Second, the IJ did not address Petitioner's eligibility for relief during the bond hearing but in the written decision ruled Petitioner "does not have a clear pathway to remain in the country" and Petitioner's attitude

was "generally lax toward his immigration status." [Dkt. 14-2 at 5].  Lastly, at the bond hearing, the IJ dismissed, without any specific reference, Petitioner's continuous residence since 1996, family ties, fixed address, stable employment, and history of payment of tax in the United States, and in the written decision, the IJ enlists these factors, and, without any explanation, summarily concludes that "these factors were not strong enough to overcome that … [Petitioner] does not have a clear pathway to remain in the country." [Id.].  These differences cast significant doubt on the adequacy of the bond hearing that Petitioner received.  Accordingly, the Court notes, while Immigration Practice Manual permits the IJs to prepare "a written decision based on notes from the hearing" after a party appeals before the BIA, it may not function to substitute for the meaningful opportunity to be heard that must be afforded to the Petitioner at the hearing. See U.S. Dep't of Justice, Exec. Off. For Immigration Rev., Immigration Court Practice Manual, § 9.3(e)(vii).

Aside from these differences, the IJ's written decision also shows at least three material inconsistencies—that, cumulatively, evince the IJ's lack of proper application of legal standards for flight risk.  First, the IJ noted that Petitioner "does not have a criminal record of conviction" but later in the memorandum determined his "continual traffic violations in connection with … [his] generally lax attitude toward his immigration status" as proof of Petitioner's "disregard for the law." [Id. at 5-6].  Given the IJ notes Petitioner lacks any criminal record of conviction, his traffic violations—which were all dismissed—do not reasonably merit the finding of Petitioner's purported disregard for the law. Timbigamba v. FCI Berlin, Warden, No. 26-CV-281, 2026 WL 1470320 (D.N.H. 2026) (rejecting the Government's attempt "to transform an unlawful detention into a lawful one through post-hoc justifications.") (quoting Singh v. Valdez, No. 1:26-cv-1109, [Dkt. 11] at *10-11 (D. Colo. 2026).

Second, the IJ states that Petitioner was the "subject of a targeted enforcement operation" while the government's I-213 clearly states that Petitioner's arrest was collateral to the ICE's vehicle stop for a different target. [Dkt. 14-2 at 1; 13-5 at 2-3]. Since Petitioner was not the target, ICE also did not have a warrant to arrest him. Instead, ICE made a warrantless arrest, justifying it on the allegation that Petitioner attempted to flee.

Third, the IJ determined that Petitioner's evidence of his family ties, positive letters of support, lack of criminal record of conviction, and residence in the United States for over 30 years was "not strong enough to overcome that . . . [Petitioner] does not have a clear pathway to remain in the country." [Dkt. 14-2 at 5]. At the same time, the IJ, through administrative notice of its own record, notes that Petitioner is a stated beneficiary of an I-130 (Petition for Alien Relative) filed on April 22, 2026—submitted after the bond hearing on April 6, 2026. Notably, Petitioner had also argued his prima facie eligibility for adjustment of status (based on his child's I-130) and cancellation of removal. Although proof of Petitioner's pursuit for adjustment based on the I-130 application was not available before the IJ at the bond hearing, given the filing of the I-130 application, the IJ's finding that Petitioner does not have a clear pathway to remain in the country appears to be unfounded.

Because of these material inconsistences in the IJ's post hoc memorandum, the Court cannot credit the IJ's statement that the finding of flight risk was based "[a]fter carefully considering the documentary and testimonial evidence the arguments raised by both parties at the custody determination hearing." [Dkt. 14-2 at 4]. <u>Perez Velasquez v. Bondi</u>, No. 26-CV-01759, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026); <u>see</u> <u>Garcia</u>, 817 F. Supp. 3d at 130. There is thus no evidence as to IJ's proper application of <u>Guerra</u> factors. Instead, the IJ seems to have considered the allegations contained in the I-213 report, and Petitioner's application for relief,

and purported nature thereof, which, without any further reasoning about their relevance or value as to determination of flight risk, do not evince application of Guerra factors to Petitioner's case. This constitutes misapplication of legal standards, as set out in Matter of Guerra, for determination of flight risk. Perez Velasquez, 2026 WL 1042479, at *6.

Not only did the IJ improperly apply the law, but the evidence presented does not support the finding that Petitioner is a flight risk as a matter of law.  As noted above, the IJ seemingly relied solely on I-213 report to find Petitioner to be a flight risk.  The allegations in the I-213, even if considered relevant without corroboration, do not—as a matter of law—support a finding of flight risk or discharge the government of its burden to prove flight risk by the preponderance of the evidence.

As explained above, the IJ may consider any evidence in the record provided that such evidence is probative and specific.  In assessment of sufficiency of evidence, the Court also considers whether the IJ's inference "from basic facts to ultimate facts" was reasonable, as "giv[ing] credence to 'evidentiary interpretations and illations that are unreasonable, insupportable, or over speculative" violates due process. Miti, 2026 WL 884639 at *7 (quoting Leftwich v. Maloney, 532 F. 3d 20, 23 (1st Cir. 2008)).  Here, in finding Petitioner to be a flight risk, the IJ solely relied on government's only evidence at the bond hearing, that is, I-213—a report that ICE officers prepared after Petitioner's arrest.  The I-213 report merely enlisted Petitioner's prior traffic violations, and alleged Petitioner's address on his driver's license did not match the address he gave to ICE officers at the arrest, and that he attempted to flee during arrest.  Notably, I-213 did not sufficiently explain the final disposition of Petitioners' reported traffic violations and did not explain whether the address which Petitioner gave at the time of his arrest was correct or not—a fact more pertinent to determine the risk of flight.  Further,

Petitioner disputed the allegation of attempting to flee at the time of arrest, which was not otherwise supported by any other evidence. These facts—which were not in the I-213—shows that I-213, in and of itself, was neither specific nor probative to support finding of flight risk, and the IJ thus drew unreasonable and unsupported inferences for risk of flight therefrom, violating Petitioner's due process rights. Accordingly, the IJ also erred in considering I-213 as an "inherently reliable government document," [Dkt. 13-2 at 5] without determining whether the allegations contained in it were "reliable and that its use would not be fundamentally unfair." Maurice v. Bondi, 154 F.4th 15, 20 (1st Cir. 2025).

Even if considered relevant, the allegations—as contained in the I-213—do not reasonably support the finding of flight risk. First, Petitioner's prior traffic violations could not be considered, as the IJ did, in isolation from their final outcome, recency, severity of offense and Petitioner's diligent pursuit to have each dismissed. Notably, these civil infractions were duly dismissed. The IJ appears to have considered the charges in isolation from the nature of each charge, final disposition thereof, and Petitioner's pursuit of legal proceedings for each. While it is correct that Petitioner had several incidents of traffic violation, he appeared in all his proceedings, paid the necessary fines, and had each charge dismissed. Thus, the record did not reasonably support the IJ's finding of Petitioner's "disregard for following certain laws." [Dkt. 14-2 at 5].

Second, the record does not explain the relevance of the difference between the address on Petitioner's driver's license and the one he told ICE officers at the arrest. The record undisputedly shows Petitioner, and his family maintain a stable residence—which was the same address that Petitioner told ICE. The I-213, thus, shows Petitioner's truthfulness as opposed to

12

his disregard for law.  Accordingly, the IJ's inference of Petitioner's disregard for law was not supported by the evidence, thus violating his due process rights.

Lastly, the allegation that Petitioner attempted to flee during arrest was disputed at the bond hearing.  ICE justified Petitioner's warrantless arrest based on that he attempted to flee and could "likely escape or continue to evade immigration officials." [Dkt. 13-5 at 2].  Given Petitioner's refutation of this allegation, and apparent self-serving nature of this allegation to justify a warrantless arrest, the IJ's credence to this allegation or any inference therefrom without any corroborative evidence was inadequate.  Accordingly, this disputed allegation does not sufficiently support finding Petitioner disregarded law or posed risk of flight.

Therefore, the I-213 could not, as a matter of law, support the finding of flight risk especially given overwhelming evidence suggesting otherwise.  Accordingly, the bond hearing afforded to the Petitioner was constitutionally inadequate.

### III.    REMEDY

Having concluded that Petitioner was not afforded a constitutionally adequate bond hearing, the Court now considers an appropriate remedy for Petitioner.  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  However, the federal courts have wide discretion and flexibility in granting specific habeas relief. See U.S. v. Torres-Otero, 232 F.3d 24, 30 (1st Cir. 2000) (in the context of §2255, "remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy"); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief.").

Where a petitioner does not pose a danger to the community or is unlawfully determined to be a flight risk, courts have regularly ordered immediate release. See, e.g., Miti, 2026 WL 884639 at *1; Garcia, 817 F. Supp. 3d at 131; Soriano v. Hernandez, No. 26-CV-00900, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026); W.T.M. v. Bondi, 25-CV-02428, 2026 WL 262583, at *5 (W.D. Wash. Jan. 30, 2026); Miri v. Bondi, No. 26-CV-00698, 2026 WL 622302, at *11 (C.D. Cal. Mar. 5, 2026).

Here, despite Petitioner's prima facie proof of his eligibility to legalize his status based on I-130, and his otherwise obedience to the law, he was unnecessarily detained upon a warrantless arrest, and his bond hearing was constitutionally inadequate.  Further, the IJ did not find Petitioner to be a danger to the community.  Instead, Petitioner was found to be a flight risk based on insufficient evidence.  As a result, he has now been detained for three months—a detention prolonged by violation of his due process rights.  Under the circumstances, there is no basis for Petitioner's continued detention, and thus immediate release is an appropriate remedy.

## IV.    CONCLUSION

For the foregoing reasons, Slander Mourao's Petition is **GRANTED**.  Respondents are **ORDERED** to release Petitioner.  Petitioner's Motion to Expedite Ruling [Dkt. 19] is **DENIED AS MOOT**.

**SO ORDERED.**

Dated: June 25, 2026                          /s/ Angel Kelley
                                              Hon. Angel Kelley
                                              United States District Judge

14